# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **ROBERT J. MARSHALL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **1:09CV314** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Robert J. Marshall, a federal prisoner, has brought a motion for return of property. (Docket No. 2.) In that motion, Plaintiff states that "[f]orty seven thousand dollars was seized from me personally by the 'DEA' on August 29, 2007. The money was my personal money and no one else has any personal rights to the money that was seized from me." (*Id*. ¶ VI.) He claims that he wrote to the DEA on "August 29, 2007, at the time of [his] arrest" in an effort to have the money returned, but received no response. (*Id*. ¶ VII.) Plaintiff now seeks to have the money returned. Defendants have filed a motion for summary judgment in which they seek to have Plaintiff's motion denied. (Docket No. 9.) Plaintiff has filed a response (Docket No. 12), Defendants have filed a reply (Docket No. 16), and Plaintiff has filed what amounts to a surreply (Docket No. 17). The motion for

return of property and Defendants' motion for summary judgment are now before the Court for decision.[1]

## Facts

The Drug Enforcement Administration (DEA) took $49,880 in United States currency from Plaintiff after he paid the money to an undercover agent with the intent to purchase two kilograms of cocaine hydrochloride. *United States v. Marshall*, 1:07CR325-1, Docket No. 11 (M.D.N.C). The DEA later adopted the seizure and began administrative forfeiture proceedings as to the money.

In accordance with necessary procedures, the DEA sent a notice of forfeiture addressed to Plaintiff at 7624 Halldale Road in High Point, North Carolina. That mailing was returned marked "RETURN TO SENDER. NOT DELIVERABLE AS ADDRESSED -

---

[1] Following the conclusion of briefing in this case, a motion was filed, purportedly by Plaintiff, asking that his return of property motion be dismissed. The motion was granted before it was discovered that the dismissal request was actually filed by another inmate without Plaintiff's knowledge. Once this was discovered, the case was reopened and Plaintiff's return of property motion was allowed to continue. (Docket No. 23.) Plaintiff later filed two further documents. One is a letter asking for an update on the status of his case and notification as to what further briefing is required. (Docket No. 24.) The second is entitled "Petitioner's Motion for Extension of Time to Re-file his Motion for Return of Property and to Otherwise Request of this Honorable Court to Inform him of the Status of his Case." (Docket No. 25.) The intent of the document is unclear other than its title's suggestion that Plaintiff may think he needs to refile his return of property motion. Of course, he does not. The motion is still pending, is fully briefed, and is ready for a decision. Nothing more is needed or would be proper. His motion for an extension of time will be denied and this Order and Recommendation will apprise him of the status of his case.

UNABLE TO FORWARD." (Docket No. 10, Ex. A, ¶ 4(b) and Exs. 1, 2.) The DEA then sent a notice of forfeiture via certified mail to the Plaintiff at the Forsyth County Detention Center, 201 North Church Street, in Winston Salem, North Carolina. (*Id*. ¶ 4(c) and Ex. 3.) That notice was accepted and signed for by J.R. Ball, Reception Officer, on October 22, 2007. (*Id*. Ex. 4.) Records show that Plaintiff was held in custody at the Detention Center from October 1, 2007 until November 7, 2007. (*Id*. Ex. C.) The Detention Center's standard operating procedures dictate that inmate mail be processed daily and delivered within twenty-four hours of receipt. Inmate mail from the DEA would have been treated as "privileged" under the Detention Center's procedures. Such mail is supposed to be opened in front of the addressee inmate within twenty-four hours of receipt. (*Id*. Exs. B, C, D.) Finally, the DEA published notice of the pending forfeiture in the Wall Street Journal for three consecutive weeks on November 5, November 12, and November 19, 2007. (*Id*. Ex. A, ¶ 4(d) and Ex. 5.) When no properly executed claims had been filed as to the money by January 11, 2008, the DEA forfeited the money to the United States under 19 U.S.C. § 1609. (*Id*. ¶ 4(e).)

## Discussion

Motions under Fed. R. Crim. P. 41(g) are appropriate only where the property in question has not yet been forfeited to the government. Plaintiff may have filed under that rule because he was unaware of the forfeiture. However, it turns out that the property was forfeited long ago. Therefore, Plaintiff's only recourse is under the Civil Asset Forfeiture

Reform Act of 2000 (CAFRA). That act codified existing practice in the federal courts where administrative forfeitures are involved. It now provides the exclusive remedy for challenging a declaration of forfeiture. *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005). It states that a person seeking to challenge a forfeiture can do so if he is a party who was entitled to written notice prior to the forfeiture, but did not receive that notice. 18 U.S.C. § 983(e). To prevail, a plaintiff must demonstrate that: (1) the government knew, or reasonably should have known of his interest, but failed to take reasonable steps to provide notice; and (2) he did not know or have reason to know of the seizure in time to file a claim prior to forfeiture. This Court's review is limited to the issue of reasonable notice. It cannot review the merits of the forfeiture determination. *Mesa Valderrama*, 417 F.3d at 1196.

Here, there is no question that Plaintiff was a party with an interest in the seized cash or that the government knew this. The government also has not submitted proof that Plaintiff had actual notice of the pending forfeiture in time to file a claim. Therefore, the only issue in contention is whether the government took reasonable steps to provide Plaintiff with proper notice.

Regarding administrative forfeitures generally, the United States Court of Appeals for the Fourth Circuit has noted that challenges to the forfeitures have their roots in the Fourth and Fifth Amendments of the United States Constitution. Notice is related to the Due Process Clause of the Fifth Amendment. The Court of Appeals has stated that "failure to

-4-

provide adequate notice of an administrative forfeiture raises the prospect of the government taking ownership of private property while the former owner of that property remains wholly ignorant of the transaction. The adequacy of notice of an impending forfeiture is thus a matter of obvious constitutional magnitude." *United States v. Minor*, 228 F.3d 352, 356 (4th Cir. 2000)(citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Regarding due process, the United States Supreme Court has held that it is satisfied if notice sent by the government is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Dusenbery v. United States*, 534 U.S. 161, 168 (2002)(quoting *Mullane*, 339 U.S. at 314). The notice does not have to actually be received as long as it is "reasonably calculated" to provide proper notice. Also, "heroic efforts" by the government are not required, only "reasonable" ones. *Id*. at 170. "'The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'" *Id*. at 168, *quoting Mullane*, 339 U.S. at 315.

Due process in prisoner cases is defined largely by *Dusenbery*. There the Supreme Court held that mailing notice to the facility where the potential claimant was incarcerated satisfied due process under *Mullane* where the facility had procedures for delivering mail to prisoners during a "mail call." The plaintiff in that case argued that other procedures, such as having the prisoner sign a document showing that he received the mail, were required. However, the Supreme Court concluded that they were not. *Id.* at 171-72. It also

held that due process does not require actual notice or actual receipt of notice. *Id.* at 164, 170-72. Cases decided since *Dusenbery* have applied these standards. *See*, *e.g., Nunley v. Dep't of Justice,* 425 F.3d 1132, 1137-38 (8th Cir. 2005)(rebuttable presumption that delivery of certified mail to jail that has internal procedures for delivering mail is reasonable attempt at giving notice; burden is on Plaintiff to show inadequacy)*; Chairez v. United States*, 355 F.3d 1099, 1101-02 (7th Cir. 2004) (proof of delivery to the jail is all that is required, at least absent knowledge of some problem with the jail's delivery system); *Hamilton v. United States*, Civil Action No. L-06-991, 2007 WL 5063805, at *2 (D. Md. May 29, 2007) (due process requirements met where notice was sent to the jail where the prisoner was held, someone at the jail signed for it, and the jail had a proper procedure for delivery); *Collette v. DEA*, 386 F. Supp. 2d 1120, 1134 (D. Alaska 2005) (same), *aff'd in pertinent part*, *reversed in part*, 247 Fed. Appx. 87 (9th Cir. 2007).

Here, the government sent proper notice to Plaintiff at the Forsyth County Detention Center where he was incarcerated. That notice was received and signed for at the Detention Center, which had meaningful procedures in place to see that inmates received such mail.

Plaintiff argues that he did not receive the notice and that, in addition to the procedures referenced by Defendants, the Forsyth Detention Center also had a procedure requiring that legal, privileged, and special mail be signed for upon delivery by inmates using Form S123. However, even if both of these assertions are true, Plaintiff cannot prevail. The notice mechanism employed by the government is reasonable under due

process standards and the case law set out above. It sent notice via certified mail to the facility where Plaintiff was housed and the mail was signed for by a Detention Center official. The Detention Center also had in place a standard procedure to see that mail was promptly delivered to inmates. All of this is so even if the Detention Center did not follow its policy[2] in this instance or if Plaintiff did not actually receive the notice of forfeiture for some reason. No matter the outcome of the Detention Center's notice procedure in this case or the reasons for that outcome, Defendants' actions in attempting to give Plaintiff notice were steps "such as one desirous of actually informing [Plaintiff] might reasonably adopt to accomplish it," which is all that is required by *Dusenbery*. For that reason, Defendants' motion for summary judgment should be granted.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for an extension of time (Docket No. 25) is **DENIED**.

**IT IS RECOMMENDED** that Defendants' motion for summary judgment (Docket No. 9) be granted, that Plaintiff's motion for return of property (Docket No. 2) be denied, and that this action be dismissed.

---

[2] As explained by Defendants in their reply brief, Form S123 is mentioned in the Detention Center's mail delivery procedures, but is not explicitly required by its mail delivery procedures. Further, if the form was required as Plaintiff claims, this would mean only that the Detention Center's delivery policies were arguably even better than shown in the evidence presented by Defendants. This would aid, not harm, Defendants' case.

This the  25th  day of October, 2010.

                              _____/s/ P. Trevor Sharp_____
                                        United States Magistrate Judge